753 So.2d 463 (1999)
John Wayne HESTER, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01504-COA.
Court of Appeals of Mississippi.
November 16, 1999.
*465 Michael G. Thorne, Tupelo, Attorney for Appellant.
Office of the Attorney General by Pat S. Flynn, Attorney for Appellee.
BEFORE McMILLIN, C.J., MOORE, AND THOMAS, JJ.
McMILLIN, C.J., for the Court:
¶ 1. John Wayne Hester was convicted in Lee County Circuit Court of one count of sexual battery on his five-year-old step-daughter. He has appealed that conviction to this Court, raising a number of issues. We find the issues to be without merit and we, therefore, affirm the conviction.

I.

Facts
¶ 2. Department of Human Services officials were made aware of possible sexual misconduct involving a five-year-old female child when the child's older brother spoke of the matter at school. A DHS social worker summoned to the school interviewed the female child and the child reported that her stepfather, John Hester, had recently engaged in improper sexual behavior with her while in the process of giving her a bath. The social worker, as a part of her investigation, interviewed the child's mother and Hester together and then asked to interview Hester alone. During that interview, Hester admitted that he had performed an act of cunnilingus on the nude child and also admitted to improper contact between his pelvic area and the child's. The exact nature of that contact was not made clear in this first statement from Hester.
¶ 3. Based on that admission, the social worker called local law enforcement officials. An investigating officer arrived and interviewed Hester after first verbally informing him of his Miranda rights. Again, Hester verbally admitted improper sexual contact with the child. Hester was then transported to the jail where he was again given his Miranda rights. This time, he signed a written waiver of those rights and also gave a written statement concerning his sexual activity with the child. Several days later, Hester was interviewed yet again by another investigating officer and, after executing a written waiver of his Miranda rights, gave a statement in which he admitted to a physical penetration of the child's vagina with his penis after having performed an act of cunnilingus on the child.
¶ 4. Hester sought unsuccessfully to suppress his out-of-court statements to the DHS social worker and the investigating officers. He also pursued, without success, a motion in limine to bar introduction of the child's out-of-court statements on the basis that they constituted inadmissible hearsay. At trial, the victim, who was seven years old by that time, testified in person. In addition, the DHS social worker and the investigating officers were permitted to relate the statements made to them by the victim concerning Hester's activities. Evidence was also received of the incriminating statements made by Hester to the various investigating officials. Hester testified in his own defense, denying any improper sexual activity with the child and denying that he had made those admissions of improper activity reported by the social worker and investigating officers.
¶ 5. The jury convicted Hester and his post-trial motions for relief from that verdict before the trial court were denied. This appeal followed.

II.
The Sufficiency of the Evidence of Guilt
¶ 6. Hester claims that the evidence was insufficient as a matter of law to support *466 a conviction of the crime of sexual battery. In actuality, however, his argument amounts to an attack on the trial court's decision to admit evidence of the victim's extra-judicial statements implicating Hester, which he claims were inadmissible hearsay. Once this evidence is removed from consideration, according to Hester's argument, the only remaining evidence of guilt is the uncorroborated testimony of the child. Hester then attacks the child's credibility by pointing out that, during cross-examination, she denied ever having told a lie or a "story" in her life. This, Hester urges, is an incredible proposition on its face, given children's general propensity to tell the occasional falsehood. It is, according to Hester, such an unbelievable assertion that it effectively destroys any credibility the child might otherwise have had, leaving in the record nothing but Hester's own denial of any such improper activity. On this state of the record, according to Hester, this Court has no choice but to reverse his conviction.
¶ 7. This Court, in assessing an attack on the sufficiency of the evidence of guilt, is obligated to view the evidence in the light most favorable to upholding the verdict. Taylor v. State, 733 So.2d 251, 256 (Miss.1999). Only if, viewing the evidence in that light, we are convinced that the proof as to one or more of the essential elements of the crime was so lacking that a reasonable and fair-minded jury could only find the defendant not guilty are we obligated to intercede. Id.
¶ 8. Hester's argument contains several flaws. First, it requires us to concede the validity of his attack on the trial court's evidentiary rulings concerning the admissibility of the child's out-of-court statements. For reasons which we will explain later in this opinion, we do not agree that such evidence should have been excluded. Secondly, his argument totally ignores the evidentiary impact of his own admissions of improper sexual activity made not once, but on four separate occasions. Finally, we must observe that we find little merit in Hester's argument that the child's denial of ever having told an untruth utterly destroyed her credibility. The question of the measure of credibility to be given to any particular witness is a matter vested in the jurors, who have the opportunity to observe first-hand the demeanor of the witnesses and to determine what weight and worth to assign to any particular witness's testimony. Anderson v. State, 461 So.2d 716, 719 (Miss.1984). It was for the jury, and not this Court, to assess what impact this young child's denial of ever having told a falsehood would have on her believability as to those alleged facts related by her that bore directly on Hester's guilt. It is evident that the jury elected to believe the child's assertions over Hester's own profession of innocence, and we are unconvinced by Hester's argument that the jury was obligated to decide that matter otherwise.
¶ 9. In the course of his argument on this score, which actually continues in various forms through the first three issues raised in his appeal, Hester also seems to suggest that, at the least, the verdict was against the weight of the evidence. Once again, the foundation of his argument is the proposition that much of the evidence heard by the jury should have been excluded, so that, in the final analysis, Hester's own denials ought to be seen as outweighing the alleged victim's uncorroborated statements.
¶ 10. A claim that the verdict is against the weight of the evidence must first be tested at the trial level through a new trial motion. URCCC 10.05; Ponder v. State, 335 So.2d 885, 886 (Miss.1976). The trial court should grant the motion only if the court concludes that, based on the weight of the evidence, to permit, a guilty verdict to stand would work a substantial injustice. Jones v. State, 635 So.2d 884, 887 (Miss.1994). If the trial court denies the motion, a reviewing court on appeal may overturn the trial court's decision only if the appellate court is satisfied *467 that the trial court was manifestly in error in denying the motion. Horton v. State, 726 So.2d 238, 243 (Miss.Ct.App. 1998). In both inquiries, the courts are required to view all of the evidence and to assess it in the light most favorable to upholding the verdict. Id.
¶ 11. The State presented substantial evidence of Hester's guilt, including the testimony of the victim as corroborated by her earlier out-of-court statements, together with Hester's own repeated admissions of improper sexual activity with the child. The only evidence weighing against that proof was Hester's own in-court denials together with the testimony of a several family members and friends who suggested that such activity was so out of character for Hester that they found it unbelievable. This Court does not find this evidence so compelling as to convince us that the trial court should have granted a new trial to prevent a clear injustice, and we decline to find that the verdict was against the weight of the evidence.

III.

Proof of Venue
¶ 12. Hester claims that his conviction should be reversed because of the State's failure to prove that his alleged criminal activity occurred in Lee County. Venue is an essential part of a criminal prosecution and the State bears the burden of proving venue beyond a reasonable doubt. Hughes v. State, 735 So.2d 238, (¶ 20)(Miss.1999). The State attempted to prove venue by offering evidence of the address of Hester's residence, which was where the activity was alleged to have occurred. The prosecutor then asked one of the investigating officers whether it was not a fact that this address was located in Lee County. The officer at first responded that he did not know that to be a fact within his own personal knowledge. Prior to the close of the prosecution's case-in-chief, that same officer was recalled to the stand and was permitted, over a hearsay objection from the defense, to testify that "911" records used by law enforcement and other emergency service agencies showed the address to be within the boundaries of Lee County. Hester did not attempt to cross-examine the officer further on the issue and introduced no affirmative evidence indicating that the property might, in fact, lie in another county.
¶ 13. Now, on appeal, Hester urges that the officer's testimony should have been excluded as hearsay since it was not based upon his own personal knowledge. This Court is of the opinion that information of this nature, identifying the location of a particular residence as being within a particular jurisdiction according to official 911 records, is admissible under Mississippi Rule of Evidence 803(6). We take judicial notice that these records were compiled, at least in part, to facilitate law enforcement and other emergency service personnel to properly respond to emergency situations. One of the key elements of permitting an appropriate and timely response to an emergency call placed to the 911 dispatcher is for the dispatcher to know what jurisdiction ought to be called upon to respond. In matters where the office of the sheriff is the appropriate agency to be dispatched, this information necessarily includes the county of the particular residence since a sheriffs jurisdiction in Mississippi is defined by county boundary lines. Thus, these officially-compiled records properly contain a notation of what county a particular address lies within as an integral and necessary part of the record.
¶ 14. We also hold that a law enforcement officer who regularly relies upon information contained in such records to accomplish his duties is a "qualified witness" to sponsor the admission of information derived directly from those records within the meaning of Rule 803(6) without the necessity of calling the official custodian of such records for a particular county.
¶ 15. As a practical matter, it would be impossible to exclude some form of hear-say *468 evidence from the proof of venue in any criminal prosecution since no one other than a competent surveyor could testify of his own knowledge as to the exact location of the boundaries of the various counties of this State, and even a surveyor would be forced to rely upon official governmental records delineating the boundaries of a particular county to determine whether a particular location were encompassed within those boundaries. In reality, a person's knowledge of the location of county lines is gleaned from any number of sources, including, in all probability, heavy reliance upon maps, signs and other markers compiled or erected by governmental agencies whose accuracy certainly cannot be vouchsafed by an officer testifying as to venueitems which, on their face, offer no greater assurance of accuracy than do officially-compiled 911 records. We are satisfied that a law enforcement officer's testimony concerning his knowledge on the question of what county a particular residence lies within, even if it is shown that his knowledge was gleaned solely from official 911 emergency response records, is sufficient to make a prima facie case of proper venue. Since Hester offered no substantive evidence indicating (a) that the location of his residence may, in fact, have been in some other county than Lee, or (b) that the county's 911 records for some reason were lacking in trustworthiness, we conclude that this particular attack on the sufficiency of the State's evidence is without merit.

IV.

The Admission of Hearsay
¶ 16. Hester claims that the trial court committed reversible error by admitting the testimony of the DHS social worker regarding information told to her by the child victim. Hester's position is that the evidence was inadmissible hearsay. The trial court, after conducting the required hearing on the matter outside the presence of the jury, concluded that the child's statements made to the social worker, though unquestionably hearsay, were admissible as substantive evidence under Mississippi Rule of Evidence 803(25), which provides an exception to the exclusionary hearsay rule for certain extra-judicial statements made by children of tender years. The record shows that the child testified at trial and that the trial court, prior to admitting the child's statements, determined that the overall circumstances under which the statements were made provided the "substantial indicia of reliability" required under Rule 803(25). Hester does not directly challenge these findings in his brief, nor does he suggest any reason why the hearsay exception of Rule 803(25) should have no application to this case. Rather, he confines his arguments to the general proposition that hearsay evidence is inadmissible.
¶ 17. Conceding the accuracy of all of Hester's statements concerning the admissibility of hearsay evidence in general, we are still faced with the proposition that the trial court did not admit the evidence on the basis that it was not hearsay, but rather on the proposition that the admittedly hearsay evidence was, nonetheless, admissible as one of the recognized exceptions to the general rule. Because Hester failed to present any argument or citations of authority pertaining to the particular basis upon which the evidence was admitted, we conclude that the issue is not properly before the Court and decline to consider this issue further. See McGee v. State, 40 So.2d 160, 162 (Miss.1949).

V.

The Lack of Definiteness in the Indictment
¶ 18. The indictment in this case specified only that the incident in question occurred some time in December 1996. Hester sought to have the indictment dismissed for its failure to specify a definite date upon which the incident of abuse was alleged by the State to have occurred. The trial court declined to do so and Hester *469 now raises that as error before this Court, contending that such vagueness deprived him of his ability to properly defend himself, including the possibility of providing an alibi defense to the charge.
¶ 19. The Mississippi Supreme Court has long recognized that crimes of a sexual nature involving young children often occur under circumstances where it is difficult to ascertain with any high degree of accuracy the exact time of the incident. See, e.g., Fisher v. State, 690 So.2d 268, 270-71 (Miss.1996); Eakes v. State, 665 So.2d 852, 860 (Miss.1995). It is a matter of common knowledge that younger children, though quite able to recall and recount with some degree of accuracy certain events that occurred in their lives, simply have not attained the level of education and intellectual development that would permit them to specify with any precision the date or time that such events may have occurred. In a criminal prosecution of this nature, it therefore becomes incumbent upon the State to provide evidence of the time of the alleged criminal activity from a source other than the victim, and it is often a fact that the time can be determined, at best, as only an approximation.
¶ 20. In this case, the first indication of Hester's alleged improper activities came to light in January 1997 and Hester, in his own statement, indicated that the event had occurred shortly before Christmas of 1996. The child victim was, at the time, only five years of age and was incapable of providing any more specificity as to when the event happened, thus leaving the State with no direct proof of time other than the general allegation that it occurred some time in December 1996.
¶ 21. Hester points to no particular unique facts that would tend to show that this lack of definiteness had some actual impact on the preparation of his defense, and it can be readily assumed from this record that Hester had access to the child throughout the month in question since the two resided in the same household the entire period. On the facts of this case, we conclude that the inability of the State to charge or prove an exact time and date of the offense with any more exactitude than it did was not so fundamentally prejudicial to Hester's defense as to deprive him of a fair trial. We, therefore, find this issue to be without merit.

VI.

The Admissibility of Hester's Out-of-Court Statements
¶ 22. Hester claims that the trial court erred in its ruling admitting his various out-of-court inculpatory statements to officials investigating the alleged abuse. Hester's argument consists entirely of an assertion that, based on Hester's own testimony at the suppression hearing, he did not fully understand his right to remain silent when being interrogated by investigation officials.
¶ 23. Hester's first statement was to a DHS official without arrest authority and was given in a non-custodial setting. In those circumstances, there is no requirement that a person be given his Miranda warnings prior to being interviewed. Porter v. State, 616 So.2d 899, 907 (Miss. 1993).
¶ 24. As to the remaining statements to law enforcement officials, there was evidence presented by the officers themselves that Hester was informed of his rights not to give evidence against himself and that he fully indicated his understanding of that right before knowingly and voluntarily waiving that right and making a statement. Even at the suppression hearing, Hester had some difficulty in stating what part of his rights he did not fully understand. The trial court sits as trier of fact in matters such as this. Underwood v. State, 708 So.2d 18 (¶ 35)(Miss.1998). On appeal, we may not set aside the trial court's findings of fact unless they appear from the record to be clearly erroneous. Id. The trial court heard testimony from all those having first-hand knowledge of the circumstances surrounding Hester's various statements *470 and was in the best position to assess the credibility of these witnesses and the weight to be given their testimony. The court gave greater credence to the law enforcement officials' version of events than that offered by Hester. This Court, absent some more compelling reason than Hester has advanced in his brief, is without authority to disturb that conclusion.
¶ 25. Though Hester purported to raise eight issues in his brief, we have concluded that some of them are nothing more than a re-hash in slightly different form of matters raised elsewhere in the brief. Finding that we have considered all pertinent issues of law properly presented by Hester in this appeal and finding them to be without merit, this Court affirms the judgment of the Circuit Court of Lee County.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY OF THE CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEE COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.