778 So.2d 786 (2001)
David JACKSON a/k/a David Donnell Jackson, Appellant
v.
STATE of Mississippi, Appellee.
No. 98-KA-00469-COA.
Court of Appeals of Mississippi.
February 27, 2001.
Gail Shaw-Pierson, Canton, Lisa Mishune Ross, Rigeland, for Appellant.
*787 Office of the Attorney General by Michael C. Moore, Wayne Snuggs, Jeffrey A. Klingfuss, for Appellee.
Before KING, P.J., PAYNE, and IRVING, JJ.
KING, P.J., for the Court:
¶ 1. David Jackson was convicted of possession of cocaine with intent to distribute. Jackson was sentenced, as an habitual offender, to serve a term of thirty years in the custody of the Mississippi Department of Corrections and ordered to pay court costs upon release. Aggrieved by his conviction and sentence, he now appeals raising the following issues: (1) whether the trial judge was disqualified from presiding over any matters involving the defendant's convictions for burglary and business burglary, (2) whether the State deprived the defendant of his right to due process by failing to inform the court that the trial judge had actively participated, as an assistant district attorney, in the defendant's prior convictions, (3) whether the trial judge erred by allowing the State to elicit testimony regarding the defendant's alleged oral confession where the State failed to disclose the confession, (4) whether the trial judge erred by allowing the prosecutor to call a non-sequestered witness to testify during the suppression hearing, (5) whether the trial court should have granted the defendant a continuance to prepare for a witness examination of other undisclosed confession, (6) whether the trial judge erred by allowing the State to introduce the defendant's alleged written confession, and (7) whether the cumulative errors in this case denied the defendant a right to a fair trial.
¶ 2. Finding no prejudicial error, this Court affirms.

FACTS
¶ 3. On February 14, 1997, at approximately 4:20 p.m., nearly twenty members of the Madison County Sheriffs Department entered the home of Claudette Luckett of Canton, Mississippi to execute a search warrant. Luckett was not home, but several guests and three of her children, including David Jackson, were present.
¶ 4. Deputies entered the house and began to search various rooms. Jim Marlett, chief narcotics investigator, interviewed and searched several women who were in the house. Marlett excused the women when no drugs were found. When Deputy Brad Harbour of the K-9 unit entered the house, Jackson was found in the hallway. After ordering Jackson to lie on the floor, Deputy Harbour secured the house to make sure no other occupants were inside it.
¶ 5. Harbour and Deputy Joey Ledlow then searched a closet in a nearby bedroom and found a white plastic bag with individual bags of crack cocaine inside. Deputy Mike Brown recovered a Raven .25 caliber automatic pistol from a dresser drawer in the southwest bedroom of the house. From the same dresser, Deputy Brown recovered two plastic bags that contained a number of smaller plastic bags.
¶ 6. Luckett finally arrived home and Marlett questioned her about the crack cocaine. Luckett indicated a lack of knowledge of the drugs. Marlett warned Luckett, Jackson and several other male guests that someone had to accept ownership of the crack cocaine. Initially, Demetrius Robinson claimed ownership of the drugs, but Marlett did not believe him. Marlett then threatened to send the minor children to social services and to arrest Jackson's mother. Shortly thereafter, Jackson confessed to being the owner of the drugs. Luckett and Jackson were taken to the Madison County Detention Center where they were held without bond. On February 17, 1997, while in Marlett's office, Jackson signed a statement admitting that the drugs belonged to him. The next day Luckett was released.
*788 ¶ 7. When the prosecution attempted to question Marlett about the alleged oral confession made the day of Jackson's arrest, the defense objected and made a motion to suppress. The defense argued that the prosecutor failed to disclose the substance of Jackson's February 14, 1997 oral confession during discovery. A suppression hearing was held on this motion, during which the State voluntarily withdrew and abandoned its request to introduce this oral confession. When testimony resumed, the prosecution attempted to elicit testimony from Marlett regarding Jackson's alleged written confession given on February 17, 1997. Defense counsel objected and moved to suppress the written confession. During this suppression hearing, both Luckett and Jackson testified that Marlett offered Luckett's freedom in exchange for Jackson's signature on the written confession. The trial judge indicated that having considered Jackson's experiences and familiarity with the criminal justice system, he found this testimony incredible. The judge found that Jackson's written confession was freely and voluntarily given, without coercion or promise of reward and therefore allowed its admission in evidence.
¶ 8. At the end of the prosecution's case, defense counsel, with the prosecution joining in, moved for a directed verdict on the charge of possession of a firearm by a convicted felon, which the court granted. The defense then moved for a mistrial because of the several weapons which had been displayed on the prosecutor's table. This motion was denied. Jackson was found guilty of possession of cocaine with intent to distribute, sentenced, as an habitual offender, to serve a term of thirty years in the Mississippi Department of Corrections, and ordered to pay court costs upon his release.

ISSUES AND ANALYSIS

I
(1) Whether Judge Richardson was disqualified from presiding over any matters involving Jackson's conviction for burglary and business burglary
(2) Whether the State deprived Jackson of his right to due process by failing to inform Judge Richardson and Jackson that Judge Richardson, as an assistant district attorney, actively participated in Jackson's convictions for burglary and business burglary
¶ 9. Issues 1 and 2 both relate to the propriety of the trial judge serving in a case where he was a part of the district attorney's office, when the underlying convictions relied upon for habitual status were obtained.
¶ 10. The State relied upon Jackson's convictions of burglary and business burglary to establish habitual offender status. The indictments for these offenses were signed by Judge Richardson while an assistant district attorney, and pleas of guilty taken while he was a member of the district attorney's staff. Judge Richardson was not affiliated with the district attorney's office when Jackson was arrested on the present charge. Jackson appears to suggest that these facts required that the trial judge should have recused himself pursuant to Cannon 3C(1) of the Code of Judicial Conduct, which provides:
(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
(b) he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it....
¶ 11. Recusal under Cannon 3C of the Code of Judicial Conduct is left to the sound discretion of the individual judge *789 and is subject to review in case of abuse of discretion. Tubwell v. Grant, 760 So.2d 687(¶ 7)(Miss.2000).
¶ 12. The trial judge was not involved with the facts of the present case or the indictment in the present case. He was involved in the indictments upon which the prior convictions were based, but had no involvement in that portion of the trial (sentencing) where these prior convictions were relevant. While total recusal may have been the better course of action, this Court, under these specific facts, does not find an abuse of discretion.

II
(3) Whether Judge Richardson erred in allowing the State to elicit testimony from Jim Marlett regarding Jackson's alleged February 14, 1997 oral confession when the oral confession was not disclosed until the day of trial and in the absence of testimony from all law enforcement that the defendant's statement was freely and voluntarily given.
(4) Whether the trial judge should not have allowed the prosecutor to call Brad Harbor to testify during the suppression hearing because he was present in the courtroom after the Rule was invoked and where the prosecutor would later call Harbour to corroborate Jim Marlett's testimony regarding Jackson's alleged February 14, 1997 confession
(5) Whether the trial court should have granted Jackson a continuance to prepare for Jim Marlett's testimony regarding Jackson's alleged February 14, 1997 confession the substance of which was not disclosed by the prosecutor until the day of trial.
¶ 13. Jackson's issues 3, 4 and 5 all relate to the alleged oral confession of February 14, 1997. The record reflects that the State abandoned and withdrew its efforts to have evidence of the February 14 oral confession placed in the record. These issues are therefore moot.

III
(6) Whether the trial judge erred in allowing the State to introduce Jackson's alleged February 17, 1997 written confession.
¶ 14. Jackson asks this Court to hold that his written confession, given on February 17, 1997, was neither freely nor voluntarily given. Jackson asks this Court to hold that his decision to confess was the result of Officer Marlett's threat to charge Jackson's mother with possession of the drugs and his promise to have her released if Jackson confessed. Both Jackson and his mother testified to this slate of facts.
¶ 15. Officer Marlett testified that there were no promises or threats used to obtain Jackson's confession. According to Marlett, Jackson's mother was being held on an unrelated charge. Because she was arrested on the weekend and Monday was a holiday, no judge was available to set bond. At the first reasonable opportunity, Marlett alleged that he took Jackson's mother before a judge, who set bail, after which she was released. Marlett also testified that because Jackson's mother was presently in jail on an unrelated charge, he had her present when Jackson was questioned and confessed on February 17, 1997.
¶ 16. The trial judge heard this testimony and, in declining to suppress the confession, found the testimony of Officer Marlett to be credible, and that of the defense witnesses incredible. The resolution of issues of credibility is the province of the trier of fact. Hester v. State 753 So.2d 463(¶ 24)(Miss.Ct.App.1999). In a suppression hearing, that trier of fact is the trial judge. Where supported by credible evidence, the findings of fact of the trial court must be accepted by this Court. Id. Whether this Court, sitting as trier of fact, would have found otherwise is immaterial. There is credible evidence upon which the trial court could, and did, find this confession to be properly admissible.
*790 ¶ 17. Having said that, this Court can only wonder what purpose Officer Marlett felt would be achieved by having Jackson's mother present during questioning. She was not charged on that offense and Jackson was an adult, who, as noted by the trial court, was familiar with the criminal justice system.
¶ 18. This Court finds that the appellant has failed to demonstrate prejudicial error in the admission of the February 17, 1997 confession.
¶ 19. The Court's holding renders the remaining issue moot.
¶ 20. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF COCAINE WITH INTENT TO DISTRIBUTE AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., PAYNE, BRIDGES, THOMAS, LEE, IRVING, MYERS and CHANDLER, JJ., concur.