GRIFFIS, J.,
for the Court:
¶ 1. Chaz Pinkston was convicted in the Circuit Court of the First Judicial District of Hinds County of armed robbery and sentenced to thirty-five years in the custody of the Mississippi Department of Corrections. On appeal, he argues that: (1) his confession was involuntary; (2) the circuit court erred in admitting into evidence six photographs and a surveillance video that were allegedly first produced to Pink-ston the morning of trial; and (3) the verdict is against the overwhelming weight of the evidence. We find no error and affirm the judgment of the circuit court.
FACTS
¶ 2. On the morning of June 16, 2008, in Jackson, Mississippi, Jeffery Jackson, the manager of a local bank branch, drove into the bank parking lot and got out of his car. As he entered the branch, two armed men approached him and demanded entrance to the bank. The three of them then proceeded inside the bank.
¶ 3. The two armed robbers demanded cash. Jackson informed them that the vault was on a time mechanism and that he could not open it. The men then ordered Jackson onto his knees and began rummaging through drawers and cabinets looking for cash. The bank’s audible *1029 alarm was triggered. The two men left empty-handed but not before firing two shots at two of the bank’s computers. They drove away in an older model, dark blue or black Ford Thunderbird or Mercury Cougar.
¶4. The bank’s video surveillance captured the robbery. Later that same day, the video recording was played on the local news. After viewing the video, an anonymous tipster called the Jackson Police Department and identified Pinkston as one of the robbers. Based on that tip, a photographic lineup was produced and presented to Jackson. Jackson promptly identified Pinkston as one of the robbers. A search warrant was executed on Pinkston’s residence, where a yellow t-shirt and a UPS baseball cap were found, both of which matched clothing worn by one of the robbers. Officers also discovered that Pinkston owned a Mercury Cougar matching the description of the getaway car.
¶5. After learning he was a suspect, Pinkston turned himself into the police on June 18, 2008. That same day, officers attempted to elicit a statement from him, but after being read his Miranda rights, Pinkston invoked his right to an attorney and declined to speak. He was then transported to the Raymond Detention Center. The following day he told the facility commander that he wanted to speak with investigators. During a subsequent interview, after being advised of his rights and waiving them, he produced a handwritten statement and orally answered questions posed by the police; Pinkston’s answers were then typed out. In these statements, Pinkston confessed to being one of the robbers.
¶ 6. Pinkston was indicted for armed robbery under Mississippi Code Annotated section 97-3-79 (Rev.2006). Prior to trial, Pinkston unsuccessfully moved to suppress his confession. At trial, the State presented the confession, the matching clothes, Jackson’s eyewitness testimony, and the surveillance video. Pinkston, proceeding pro se with advisory counsel, responded with an alibi defense, which was not properly disclosed to the prosecution prior to trial, and evidence of good character. The jury returned a verdict of guilty.
ANALYSIS

1. Whether the trial court erred in admitting Pinkston’s statement into evidence.

¶ 7. Prior to trial, Pinkston attempted to suppress his confession. The circuit court denied the motion. The circuit court found that Pinkston knowingly, intelligently, and voluntarily waived his Miranda rights and made the incriminating statements. Pinkston contends that this was error.
¶ 8. When a criminal defendant objects to the admission of his confession, arguing it was involuntary, the trial court must conduct a hearing outside the presence of the jury. Cox v. State, 586 So.2d 761, 764 (Miss.1991). At the hearing, the burden is on the State to prove voluntariness beyond a reasonable doubt. Id. at 763. The State may meet this burden and establish its prima facie case by presenting the testimony of a witness with personal knowledge — which will usually be a police officer who was present when the confession was made — that the confession was voluntarily given, without any coercion, threats, or offers of reward. Id. If that is done, the defendant must show otherwise. Id. The trial judge sits as the finder of fact, weighs the evidence, and ultimately decides whether the State has met its burden. Jackson v. State, 778 So.2d 786, 789 (¶ 16) (Miss.Ct.App.2001). If the trial judge finds the confession was voluntary, we must affirm if the correct legal stan *1030 dard was applied and the finding was supported by the evidence. Cox, 586 So.2d at 763.
¶ 9. Here, the circuit court applied the correct legal standard, and its finding was supported by the evidence. At a pretrial hearing, the State presented testimony from two officers who were present during the confession. Their testimonies were that, at the outset of the interrogation, they read Pinkston his Miranda rights, and he signed a waiver of those rights. He proceeded to handwrite a confession, and then he participated in an oral question-and-answer session that was typed out by one of the officers and then signed by Pinkston. There was no coercion, intimidation, or improper promises. Pinkston countered with his own testimony. He denied signing the waiver, authoring the handwritten confession, or participating in the question-and-answer session. Faced with these competing versions of events, the circuit court found the officers’ testimonies were more credible. As this Court has previously stated, determining the credibility of witnesses and weighing the evidence is a role for the trial judge in a suppression hearing, and we give deference to his factual findings. Jackson, 778 So.2d at 789 (¶ 16).
¶ 10. Because the circuit court applied the correct legal standard and the findings were supported by the evidence, we affirm the denial of Pinkston’s motion to suppress. Since the confession was properly allowed into evidence, this issue is without merit.

2. Whether the circuit court erred in admitting into evidence six photographs and the surveillance video from the bank.

¶ 11. At trial, the State introduced six photographs, five of the exterior and interior of the bank and one of Pinkston’s Mercury Cougar. In addition, the bank’s surveillance video was played to the jury. Pinkston objected to the admission of these items on the ground that they had not been properly and timely disclosed to him. He claimed that the morning of trial was the first time he had seen the photographs. As for the surveillance video, he claimed the State did not give him a copy of the video until the morning of trial, although he conceded the video was shown to him approximately two months earlier prior to the suppression hearing. The circuit court overruled his objections and allowed the items into evidence. Pinkston contends that ruling was error.
¶ 12. Pinkston argues that this amounted to trial by ambush. Pinkston cites the following as authority for this proposition: Fulks v. State, 18 So.3d 803, 805 (¶ 6) (Miss.2009); Frierson v. State, 606 So.2d 604, 607 (Miss.1992); Box v. State, 437 So.2d 19, 20 (Miss.1983); Blanton v. State, 727 So.2d 748, 752 (Miss.Ct.App.1998); and Rule 9.04 of the Uniform Rules of Circuit and Chancery Court. In Fulks, the Mississippi Supreme Court cited an excerpt from McCullough v. State, 750 So.2d 1212, 1217 (Miss.1999), which explained the Box holding, stating:
When faced with previously undisclosed evidence to which the defendant has objected, the trial court should give the defendant a reasonable opportunity to familiarize himself with the evidence. If the defendant thereafter believes he may be prejudiced by admission of the evidence because of his lack of opportunity to prepare to meet it, he must request a continuance.... If he indeed requests a continuance, the [Sjtate may opt to proceed without the undisclosed evidence, else the trial court must grant the continuance. Failure to follow the *1031 Box guidelines is prejudicial error, requiring reversal and remand.
Fulks, 18 So.Sd at 806 (¶ 11).
¶ 13. Indeed, Rule 9.04(1) of the Uniform Rules of Circuit and County Court clearly provides what must be done if “the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason.” The court shall give the defense a reasonable opportunity to examine the evidence, and if thereafter the defense claims unfair surprise or prejudice and seeks a continuance or mistrial, the court shall exclude the evidence or grant a continuance. Id. Here, Pinkston did not seek a continuance or a mistrial. Therefore, this issue is procedurally barred from our consideration on appeal because Pinkston failed to move for a continuance at trial. “ ‘[F]ailure to request a continuance constitutes a waiver of the discovery violation.’ ” Murray v. State, 20 So.3d 739, 743 (¶ 13) (Miss.Ct.App.2009) (quoting Sims v. State, 928 So.2d 984, 988 (¶ 19) (Miss.Ct.App.2006)).

3. Whether the jury’s verdict is contrary to the ovenuhelming weight of the evidence.

¶ 14. Pinkston argues that he is entitled to a new trial because the jury’s verdict is against the overwhelming weight of the evidence. We apply the following standard of review to Pinkston’s claim:
“[T]his Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial.” Dudley v. State, 719 So.2d 180, 182 (¶ 8) (Miss.1998). On review, the State is given “the benefit of all favorable inferences that may reasonably be drawn from the evidence.” Griffin v. State, 607 So.2d 1197, 1201 (Miss.1992). “Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.” Dudley, 719 So.2d at 182. “This Court does not have the task of re-weighing the facts in each case to, in effect, go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible.” Langston v. State, 791 So.2d 273, 280 (¶ 14) (Miss.Ct.App.2001).
Smith v. State, 868 So.2d 1048, 1050-51 (¶ 11) (Miss.Ct.App.2004).
¶ 15. At trial, the State presented the eyewitness testimony of Jackson, who unequivocally stated that Pinkston was one of the robbers. In addition, the bank’s surveillance video was submitted to the jury. That video showed a man with a yellow t-shirt and a UPS baseball cap. Officers testified to finding a yellow t-shirt and UPS cap at Pinkston’s residence. Also, Pinkston’s confession was before the jury. On the other hand, Pinkston’s case consisted of a fairly incredible alibi defense— which he apparently formulated during trial and sprang on the circuit court at the last minute, violating Uniform Rule of Circuit and County Court 9.05 — and a couple character witnesses who testified to Pink-ston’s truthfulness. The jury considered this evidence and found Pinkston guilty of armed robbery. This issue is without merit.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF THIRTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
*1032 KING, C.J., LEE, P.J., IRVING, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. MYERS, P.J., NOT PARTICIPATING.